J-S77024-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| SHANTE BRUCE RICE, | |
| Appellant | No. 48 MDA 2016 |

Appeal from the Judgment of Sentence December 16, 2014
In the Court of Common Pleas of Cumberland County
Criminal Division at No(s): CP-21-CR-0003481-2012

BEFORE:  PANELLA, OLSON and PLATT,* JJ.

MEMORANDUM BY OLSON, J.:                    **FILED MAY 02, 2017**

Appellant, Shante Bruce Rice, appeals from the judgment of sentence entered on December 16, 2014, following his jury trial convictions for second-degree murder, criminal conspiracy to commit criminal homicide, robbery, criminal conspiracy to commit robbery, burglary, and criminal conspiracy to commit burglary.[1]  Upon review, we vacate Appellant's conviction and sentence for criminal conspiracy to commit criminal homicide and affirm the judgment of sentence in all other respects.

The trial court set forth the facts of this case as follows:

> On October 31, 2012, [Appellant] and [c]o-[d]efendant, Brandon Mathna (hereinafter "Mathna") broke a window and entered 1 Shiloh Court in Mechanicsburg, Pennsylvania,

---

[1]  18 Pa.C.S.A. §§ 2502(b), 903/2501, 3701(a)(1)(i), 903/3701(a)(1), 3502(a), and 903/3502(a), respectively.

*Retired Senior Judge assigned to the Superior Court.

wherein they took a number of items from the residence, including jewelry, pocket knives, jars full of coins, alcohol, and three pistols. Two of the pistols from the Shiloh Court property were sold, but [Appellant] maintained possession of the third firearm, a Smith & Wesson revolver. At some point after taking this firearm from the Shiloh Court property, but prior to the instant homicide, Mathna, in the presence of [Appellant], positively test fired the pistol in a field. Afterwards, [Appellant] again took possession of the firearm.

At roughly 10:00 p.m. on the evening of November 18, 2012, slightly less than three weeks after [Appellant] and Mathna had broken into the Shiloh Court property and taken the Smith & Wesson firearm, co-[d]efendant Christian Conway (hereinafter "Conway") received a phone call from co-defendant [Tyler Mitchell] Bradshaw [(hereinafter "Bradshaw")] asking if he could pick Bradshaw up from work. After Conway picked up Bradshaw, Bradshaw informed Conway that they would be able to make some money if they could also pick up [Appellant] in Carlisle. Conway picked up [Appellant] and, at [Appellant's] request, they proceeded to pick up Mathna, who also lived in Carlisle.

After Conway picked up Bradshaw, Mathna, and [Appellant], the group began discussing plans to rob a Uni-Mart in Mechanicsburg, and Conway drove to that location. During the drive to the Uni-Mart in Mechanicsburg, [Appellant] pulled out an "Angry Birds" backpack which contained the Smith & Wesson firearm that had been taken from the Shiloh Court property. When they arrived at the Uni-Mart in Mechanicsburg, Conway parked in a development across the street, and Bradshaw, Mathna, and [Appellant] exited the vehicle and walked on foot to the Uni-Mart. Their attempt to rob the Uni-Mart was futile, because the store was closed, so Bradshaw, Mathna, and [Appellant] returned to Conway's vehicle.

After their unsuccessful attempt to rob the Uni-Mart, Conway began driving back to Carlisle when [Appellant] suggested that they could rob another convenience store, specifically, the Hess Express on Carlisle Pike. On the way to the Hess Express, the group began discussing their roles

in the prospective robbery. [Appellant] was to go into the store first to "look around," and then Bradshaw and Mathna would follow when they received word to proceed from [Appellant]. Bradshaw would carry the gun, and Mathna would carry the backpack. The three of them would call Conway when they needed to be picked up after the robbery was complete.

Conway dropped Bradshaw, Mathna, and [Appellant] off behind the Hess Express and drove away. Bradshaw, Mathna, and [Appellant] gathered behind a pine tree next to the Hess Express to prepare themselves for the robbery, and all three men again discussed their respective roles in the robbery. At this time, Bradshaw took the firearm from [Appellant's] backpack. As they had discussed previously, [Appellant] entered the convenience store first, looked around, and called Bradshaw to proceed with the robbery. Bradshaw and Mathna then entered the store, both wearing gloves and masks, and proceeded to try to rob the clerk, Linda Ness (hereinafter "Ness"). Ness was not looking towards the doorway and center of the store when Bradshaw first approached the counter, so Bradshaw asked her to turn around. Bradshaw pointed the gun directly at Ness and twice ordered her to give him money from the register. Bradshaw fired one shot, and Ness was fatally wounded. Ness did not have a weapon on her and did not put up any fight. Bradshaw and Mathna ran from the store without taking anything. Eventually, all three men were picked back up by Conway, as planned.

By the time Sergeant Todd Lindsay of the Silver Spring Police Department arrived at the Hess Express, Ness was "without life." The cause of Linda Ness's death was determined to be a single gunshot wound to the chest and neck. Officer Seth Weikert, Silver Spring Township Police Department, and Detective Les Freehling of the Cumberland County Criminal Investigation Division interviewed [Appellant]. [Appellant] explained that he was the first individual seen on the Hess Station video surveillance (that the Commonwealth produced at trial) to enter the Hess [Express] and that, after leaving the store, he passed the two individuals that next entered the store. [Appellant] admitted to providing the gun to the shooter approximately an hour before the shooting. [Appellant] said that he and

>[the] three other individuals planned the robbery at the Hess [Express] approximately five minutes before stopping there. Neither [Appellant] nor Bradshaw testified at trial.

Trial Court Opinion, 5/5/2016, at 2-5 (footnotes and record citations omitted).

The Commonwealth charged Appellant with various crimes related to the two incidents, as well as charges related to two other residential burglaries. One residential burglary occurred the day prior to the Shiloh Court burglary; the other occurred closely after the Hess Express robbery. Prior to trial, Appellant filed a motion to sever the charges On July 8, 2014, the trial court held a hearing on the motion to sever. By order of court entered on August 26, 2014, the trial court granted Appellant's motion to sever in part and denied it in part. The trial court severed the burglary prior to the Shiloh Court burglary and the burglary subsequent to the Hess Express robbery. The trial court determined that there was a logical connection between the Shiloh Court burglary and Hess Express robbery, because the burglary produced the Smith & Wesson firearm that was used to kill Linda Ness during the Hess Express robbery. The trial court determined that evidence of the one crime was admissible as to the other, because the evidence constituted a chain or sequence of events that formed the history of the case under the *res gestae* exception to Pa.R.E. 404(b)(2). Furthermore, the trial court also concluded, pursuant to Rule 404(b)(2), that evidence from the Shiloh Court burglary was admissible to prove Appellant's

knowledge, opportunity, plans, preparations, and identity in the Hess Express robbery.

Hence, the case that is the subject of the instant appeal proceeded only on the charges related to the Shiloh Court burglary and Hess Express robbery. Following a three-day trial in September 2014, the jury found Appellant guilty of the aforementioned crimes. On December 16, 2014, the trial court imposed an aggregate sentence of life imprisonment upon Appellant. More specifically, the trial court imposed life imprisonment for second-degree murder. It further imposed terms of imprisonment of 80 to 160 months for conspiracy to commit homicide, 60 to 120 months for robbery, 40 to 80 months for conspiracy to commit robbery, 12 to 24 months for burglary, and 12 to 24 months for conspiracy to commit burglary. These sentences were imposed concurrently to the life sentence for second-degree murder. No direct appeal followed.

On June 1, 2015, Appellant filed a *pro se* petition pursuant to the Post Conviction Relief Act (PCRA), 42 Pa.C.S.A. §§ 9541-9546. The trial court appointed counsel, who filed an amended PCRA petition. On December 10, 2015, the trial court held a hearing on Appellant's amended PCRA petition. The trial court determined that trial counsel was ineffective for failing to file a direct appeal as directed by Appellant. Accordingly, by order entered on

December 11, 2015, the trial court reinstated Appellant's direct appeal rights *nunc pro tunc*.  This timely direct appeal resulted.[2]

On appeal, Appellant presents the following issues for our review:

I.    Whether the trial court erred when it denied Appellant's motion to sever [the charges of] burglary and criminal conspiracy to [commit] burglary [arising from the Shiloh Court incident] from [the charges of] robbery and homicide [relating to the events at the Hess Express]?

II.   Whether the evidence presented at trial was sufficient to convict Appellant of [] second[-]degree murder?

III.  Whether the evidence presented at trial was sufficient to convict Appellant of criminal conspiracy to [commit] criminal homicide?

IV.   Whether the [trial] court erred when it failed to define the "in furtherance" element during its instruction on second[-]degree murder?

Appellant's Brief at 8 (complete capitalization omitted).

In his first issue presented, Appellant claims, "the trial court erred when it failed to sever the Shiloh Court burglary case from the Hess Express robbery case."  ***Id.*** at 17.  Appellant claims that his "identity was never raised as a defense at trial nor were Appellant's knowledge, opportunity, plans, or preparations."  ***Id.*** at 18.  He claims there was no "dispute that

---

[2]  Appellant filed a notice of appeal on January 8, 2016.  On January 12, 2016, the trial court directed Appellant to file a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b).  Appellant complied timely.  The trial court issued an opinion pursuant to Pa.R.A.P. 1925(a) on May 6, 2016.

Appellant was in possession of the firearm prior to the Hess Express robbery" but regardless, "such evidence would have been irrelevant as to whether a gun was used to murder Ness." *Id.* Appellant contends that the evidence would not have been admissible in separate trials because "there was absolutely no reason the jury needed to know that the gun used in the [Hess Express] robbery and murder had been stolen by Appellant three weeks earlier in a burglary." *Id.* Appellant contends that he was unduly prejudiced by the trial court's failure to sever the charges which allowed the Commonwealth to "essentially bolster[] the testifying co-defendant's credibility by allowing propensity evidence that Appellant was a thief and a criminal." *Id.* at 19.

Appellate review of a trial court's denial of a motion for severance is as follows:

> A motion for severance is addressed to the sound discretion of the trial court, and its decision will not be disturbed absent a manifest abuse of discretion. The critical consideration is whether the appellant was prejudiced by the trial court's decision not to sever. The appellant bears the burden of establishing such prejudice.
>
> The Pennsylvania Rules of Criminal Procedure govern the severance of offenses. Rule 583 states, "The court may order separate trials of offenses or defendants, or provide other appropriate relief, if it appears that any party may be prejudiced by offenses or defendants being tried together." Pa.R.Crim.P. 583. Further, Rule 582 provides that offenses may be tried jointly under the following circumstances:
>
> **Rule 582. Joinder–Trial of Separate Indictments or Informations**

(A)    Standards

(1)    Offenses charged in separate indictments or informations may be tried together if:

(a)    the evidence of each of the offenses would be admissible in a separate trial for the other and is capable of separation by the jury so that there is no danger of confusion; or

(b)    the offenses charged are based on the same act or transaction.

Pa.R.Crim.P. 582(A)(1).

***Commonwealth v. Mollett***, 5 A.3d 291, 305–306 (Pa. Super. 2010) (ellipsis omitted).

Appellant's position on severance relies heavily on his contention that the trial court erred in determining that evidence pertaining to the Shiloh Court burglary would have been admissible at a separate trial concerning the Hess Express robbery under Pa.R.E. 404(b). In particular, Appellant challenges the trial court's application of the *res gestae* exception in concluding that severance was unnecessary because evidence of the Shiloh Court and Hess Express crimes would be admissible at separate trials.

Bad acts evidence is inadmissible to prove a defendant acted in conformity with those acts or to demonstrate a criminal propensity. However, evidence of bad acts is admissible pursuant to our rules of evidence to prove motive, opportunity, intent, preparation, plan, knowledge, identity, and absence of mistake or accident. Pa.R.E. 404(b)(2). This list is non-exclusive. Indeed, prior to the codification of our rules of evidence, our Supreme Court set forth the following list of exceptions to the general prohibition against bad acts evidence:

- 8 -

(1) motive; (2) intent; (3) absence of mistake or accident; (4) a common scheme, plan or design embracing commission of two or more crimes so related to each other that proof of one naturally tends to prove the others; (5) to establish the identity of the person charged with the commission of the crime on trial where there is such a logical connection between the crimes that proof of one will naturally tend to show that the accused is the person who committed the other; (6) to impeach the credibility of a defendant who testifies in his trial; (7) situations where defendant's prior criminal history had been used by him to threaten or intimidate the victim; (8) situations where the distinct crimes were part of a chain or sequence of events which formed the history of the case and were part of its natural development (sometimes called "*res gestae*" exception).

Our Supreme Court has consistently recognized that admission of distinct crimes may be proper where it is part of the history or natural development of the case, *i.e.,* the *res gestae* exception.

[…O]ur Supreme Court [has] explained,

the "*res gestae*" exception to the general proscription against evidence of other crimes, is also known as the "complete story" rationale, *i.e.*, evidence of other criminal acts is admissible "to complete the story of the crime on trial by proving its immediate context of happenings near in time and place."

Where the *res gestae* exception is applicable, the trial court must balance the probative value of such evidence against its prejudicial impact. In conducting this balancing test,

courts must consider factors such as the strength of the "other crimes" evidence, the similarities between the crimes, the time lapse between crimes, the need for the other crimes evidence, the efficacy of alternative proof of the charged crime, and "the

> degree to which the evidence probably will rouse the jury to overmastering hostility."

***Commonwealth v. Brown***, 52 A.3d 320, 325–327 (Pa. Super. 2012) (some internal citations omitted).

In this case, in weighing the probative value of other crimes evidence under Rule 404(b) against its prejudicial effect, the trial court relied upon our Supreme Court's decision in ***Commonwealth v. Cousar***, 928 A.2d 1025 (Pa. 2007). ***See*** Trial Court Opinion, 5/5/2016, at 9. In that case, Cousar "was charged by three separate bills of information with, *inter alia,* two counts of criminal homicide and two counts of robbery" emerging from three separate criminal episodes that all occurred within one month of each other. ***Cousar***, 928 A.2d at 1029 (parentheticals omitted). Therein:

> On April 5, 1999, [Cousar] shot and killed Luis Santos on a street corner at point-blank range, and stole a gold chain necklace from around Santos's neck. Three weeks later, on April 26, 1999, [Cousar] was seen arguing with William Townes as [Cousar] stood on a street corner and Townes sat in his vehicle. [Cousar] drew a gun and shot Townes three times at close range, killing him. Thereafter, on May 6, 1999, [Cousar], together with three compatriots, forcibly entered Frank Schoenberger's home, robbed and beat him at gunpoint, and fled when the police arrived. An officer apprehended [Cousar] as he was running from the scene. The following day, Schoenberger discovered that the intruders had left a handgun inside his home. Police firearms experts identified the gun as the weapon used to kill Santos and Townes. All three incidents took place within several blocks of [Cousar's] place of residence in the Hunting Park section of Philadelphia.

***Id.*** at 1029.

In deeming consolidation of the offenses from the three distinct crimes proper in **Cousar**, our Supreme Court concluded:

> a crucial piece of evidence linking the two homicides was the use of the same gun. Any conclusion drawn by the jury concerning whether [Cousar] was the person who used that weapon to kill Santos would bear upon the identity of the individual who shot Townes, and *vice versa.* Furthermore, [our Supreme Court] believe[d] the jury was able to separate the evidence pertaining to the two homicides because each was (obviously) committed against a different victim, none of the eyewitnesses to the two incidents overlapped, and different investigating officers testified at trial as to each crime. [Our Supreme Court] acknowledge[d] the potential for prejudice from consolidation, as the evidence tying [Cousar] to one of the murders could have affected the jury's consideration of whether [Cousar] was guilty of the other one. In determining whether other-crimes evidence is admissible, however, the trial court must balance this type of potential prejudice against the probative value of the evidence in question. Here, as explained above, the evidence was very probative, and thus, it would not be unreasonable to conclude that its probative value outweighed the potential for such prejudice.
>
> Along these lines, in considering [Cousar's] suggestion concerning the potential introduction of the Schoenberger evidence at hypothetical separate murder trials, it may be noted that such proof would not have had the same probative value if used in this manner: it would only have tended to prove that the murder weapon used in each homicide was left in the Schoenberger residence by either [Cousar] or one of the three other assailants involved in that case. By contrast [] the proof that the gun that witnesses placed in [Cousar's] hands during the Santos killing was also used to kill Townes carried significant additional probative value as to the identity of Townes's killer, and *vice versa.* Under these circumstances, even if the Commonwealth could have proceeded on the murder charges separately as [Cousar] suggest[ed], [the Pennsylvania Supreme Court] conclude[d] that the trial court acted within its discretion in permitting consolidation.

*Id.* at 1038-1039.

In this case, the trial court severed the burglaries that occurred before and after the Shiloh Court burglary and Hess Express robbery. However, the trial court declined to sever the Shiloh Court burglary and Hess Express crimes from each other. As the trial court explained,

> [T]he *res gestae* exception applied to the Shiloh Court burglary and Hess Express crimes. These incidents took place within three weeks of one another, only a few miles apart from one another, and [Appellant] was a key actor in both incidents. The firearm which was used to kill Linda Ness in the Hess Express robbery was the fruit of the Shiloh Court burglary. As such, [the trial court] found that such evidence "was part of the natural development of facts," as contemplated by [our Supreme Court]. These two crimes, as well as [Appellant's] actions in the time between crimes, formed one complete story which shows [Appellant's] knowledge, opportunity, plan and preparation for the Hess Express crimes.
>
> [The trial court] further found that the Shiloh Court burglary was admissible for the allowable purpose of proving [Appellant's] knowledge, opportunity, plans, preparations, and specifically, [Appellant's] identity. That [Appellant] took three firearms from the Shiloh Court property, sold two of them, and kept the third was admissible to show that [Appellant] was planning and preparing for another robbery (which by opportunity later was Hess Express). Mathna's testimony that [Appellant] kept possession of the Smith & Wesson pistol following the Shiloh Court burglary showed that [Appellant] had the opportunity to bring the firearm in the Angry Birds backpack on that night and proves the identity of [Appellant] as a co-conspirator [in the Hess Express incident]. That [Appellant] and Mathna test-fired the pistol in a field showed [Appellant's] knowledge that the firearm worked and was capable of being used in the prospective robbery, thereby negating any claim of accident or mistake.

The [trial court] further found that the probative value of the evidence outweighed its potential for prejudice. In [] **Cousar**, the Supreme Court upheld the trial court's decision to conduct a single trial on [Cousar's] two murder charges and two robbery charges, despite the fact that these four charges arose from three separate incidents. The Supreme Court found the fact that [Cousar] possessed the firearm in question at the scene of the second murder to be probative of the whether [Cousar] had committed the other crimes for which he was being tried.

* * *

Similarly, in the present case, [the trial court] found the fact that [Appellant was the source of the firearm used at the Hess Express robbery and homicide], is highly probative of the fact that it was [Appellant] who burglarized the Shiloh Court property and stole the firearm. Conversely, the fact that [Appellant] took the firearm from the Shiloh property just a few weeks before the homicide makes it more probable that [Appellant] was the perpetrator who had possession of the firearm on the night of the Hess Express robbery and homicide. While the admission of such evidence is prejudicial to [Appellant], the probative value of such evidence outweighed any prejudice resulting therefrom. Thus, [the trial court] found that evidence from the Shiloh Court incident would be admissible in a separate trial for the Hess Express incident, and vice versa.

* * *

[Moreover,] the Shiloh Court burglary and Hess [E]xpress robbery and homicide involved distinct types of crimes, each crime involved different victims, and the crimes were distinguishable in time and space. Furthermore, although [Appellant] and Mathna were involved in both the Shiloh Court burglary and Hess Express crimes, the Hess Express crimes involved different co-defendants who were not involved in the Shiloh Court burglary. Although Mathna testified about all of the crimes, numerous other witnesses testified about the Shiloh Court and Hess Express crimes individually, without overlap. As such, the [trial court] found that the jury was capable of separating the evidence of each offense, and found very little chance that the jury

- 13 -

would be confused. […] To further eliminate any confusion by the jury, [the trial court] twice gave the jury an instruction on the separation of such evidence[.]

\*       \*       \*

[Finally, Appellant] was not unduly prejudiced by the joint trial and evidence of the Shiloh Court and Hess Express crimes. As discussed previously, [the trial court] saw little danger that the jury would be incapable of separating the evidence of each crime. There was not a significant threat that the jury would inappropriately cumulate the evidence to find [Appellant] guilty of [all] crimes. The [trial court] found that the Shiloh Court burglary and the Hess Express robbery and homicide were sufficiently intertwined as to justify a joint trial. As such, the only prejudice [Appellant] suffered was the type of general prejudice any defendant suffers when the Commonwealth's evidence links him to the crime for which he is being prosecuted[.]

[The trial court] note[d] that it did not so find the same in weighing the prejudice to [Appellant] in admitting the other two burglaries the Commonwealth sought to introduce at trial. Although notably such crimes would have been admissible to prove common scheme, plan, motive, intent or lack of accident, and such evidence would have been capable of separation by the jury, the [trial court] found that [Appellant] would be unduly prejudiced by the admission of the burglaries it excluded. No criminal fruits of the other two burglaries were used during the commission of the Hess Express crimes. As such, those [burglary] crimes, albeit highly relevant, were more attenuated than was the Shiloh Court burglary evidence that was allowed in at trial. Accordingly, [the trial court] excluded [the] two other burglary charges and evidence attendant thereto during the instant trial.

Trial Court Opinion, 5/5/2016, at 8-12 (citations and footnotes omitted).

We agree and discern no abuse of discretion in consolidating the two cases for trial. Initially, we reject Appellant's suggestion that knowledge, opportunity, plans, preparation and/or his identity were not issues at trial.[3] Appellant does not argue that the crimes were not close in time and proximity. In addition, Appellant concedes that the jury was capable of separating the evidence between the Shiloh Court burglary and the Hess Express robbery and murder. Appellant's Brief at 19. Moreover, we conclude the trial court properly relied upon the *res gestae* exception to Rule 404(b) in denying severance. Appellant fails to address the trial court's finding that the intervening events between the burglary and robbery were relevant to understanding Appellant's role in both the robbery and murder. Evidence from both crimes showed Appellant's acquisition, possession, testing, and control over the firearm, all of which were pivotal components of the Commonwealth's burden of showing Appellant's participation in both episodes. More specifically, the trial court recognized that Appellant stole

_____

[3] Indeed, even on appeal to this Court, viewing the evidence in the light most favorable to himself, Appellant attempts to minimize his involvement in the Hess Express robbery and murder by suggesting that the murder was not in furtherance of the robbery and that it took place after he left the store. Appellant's Brief at 22-23. Appellant also suggests that he did not know his co-defendant would use the firearm in the robbery. *Id.* at 23. Clearly, these contentions relate specifically to knowledge, opportunity, planning, preparation and/or identity. Moreover, since the Commonwealth bore the burden of proof to show Appellant's participation in the crimes as either a principal actor or co-conspirator (or both), Appellant's possession and control of the firearm played key roles at trial despite Appellant's position as to what issues he contested before the factfinder.

the firearm in the burglary, later test-fired it (which showed Appellant's knowledge that the weapon was working and capable of use), and, in turn, presented it to his co-defendant before the robbery. Trial Court Opinion, 5/5/2016, at 9. The trial court found that evidence linking the firearm to both crimes was highly probative in each prosecution and outweighed the prejudice to Appellant. Based upon our Supreme Court's decision in *Cousar*, we discern no abuse of discretion.

Appellant's second and third issues both challenge the sufficiency of the evidence. When examining a challenge to the sufficiency of evidence, our standard of review is as follows:

> The standard we apply in reviewing the sufficiency of the evidence is whether viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying [the above] test, we may not weigh the evidence and substitute our judgment for the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the trier of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence

*Commonwealth v. Beasley*, 138 A.3d 39, 45 (Pa. Super. 2016) (citation omitted).

In his second issue presented, Appellant contends there was insufficient evidence to convict him of second-degree murder under the theory that he conspired to commit the Hess Express robbery, an enumerated felony.[4]  Appellant's Brief at 20-23.  More specifically, Appellant claims, "the evidence was insufficient to show that [co-defendant] Bradshaw's slaying of Ness was in furtherance of the robbery."  *Id.* at 22.  He further avers that there was insufficient evidence that Appellant knew his co-defendant would use the firearm in the robbery:

---

[4]  We note that the trial court examined this issue as one involving Appellant's liability as an accomplice to criminal homicide and robbery.  *See* Trial Court Opinion, 5/5/2016, at 12-15 generally; *see also id.* at 13 n.54 ("Notably, [Appellant] was charged with accomplice liability to homicide and to the robbery [in the Commonwealth's a]mended information [filed] on June 11, 2014.").  However, upon review of the amended information filed on June 11, 2014, the Commonwealth never charged Appellant as an accomplice.  With respect to the Hess Express incident, the amended information charged Appellant with second-degree murder, criminal conspiracy to commit criminal homicide, robbery, and criminal conspiracy to commit robbery.  The information incorporated the language from 18 Pa.C.S.A. § 903 (criminal conspiracy) for both the criminal conspiracy to commit criminal homicide and criminal conspiracy to commit robbery charges.  Moreover, the jury's verdict and the trial court's judgment of sentence reflect convictions for conspiracy to commit both criminal homicide and robbery.  Therefore, in reviewing Appellant's sufficiency challenge, we shall consider whether the Commonwealth proved beyond a reasonable doubt that Appellant, as a co-conspirator in the robbery of the Hess Express, was criminally liable for second-degree murder in the death of the convenience store clerk.

> In fact, Appellant specifically stated that he wanted nothing to do with the firearm. There was no evidence that Appellant commanded Bradshaw to take the firearm or that Appellant knew that Bradshaw intended to brandish the firearm during the robbery.

*Id.* at 23.

Regarding conspiracy, our Supreme Court has held:

> To convict a defendant of conspiracy, the trier of fact must find that: (1) the defendant intended to commit or aid in the commission of the criminal act; (2) the defendant entered into an agreement with another (a "co-conspirator") to engage in the crime; and (3) the defendant or one or more of the other co-conspirators committed an overt act in furtherance of the agreed upon crime. The essence of a criminal conspiracy [] is the agreement made between the co-conspirators.

> As with accomplice liability, "[m]ere association with the perpetrators, mere presence at the scene, or mere knowledge of the crime is insufficient" to establish that a defendant was part of a conspiratorial agreement to commit the crime. There needs to be some additional proof that the defendant intended to commit the crime along with his co-conspirator. Direct evidence of the defendant's criminal intent or the conspiratorial agreement, however, is rarely available. Consequently, the defendant's intent as well as the agreement is almost always proven through circumstantial evidence, such as by the relations, conduct or circumstances of the parties or overt acts on the part of the co-conspirators.

*Commonwealth v. Murphy*, 844 A.2d 1228, 1238 (Pa. 2004) (internal quotations and citations omitted).

Moreover, an *en banc* panel of this Court has determined:

> Once there is evidence of the presence of a conspiracy, conspirators are liable for acts of co-conspirators committed in furtherance of the conspiracy. Even if the conspirator did not act as a principal in committing the underlying crime, he

- 18 -

is still criminally liable for the actions of his co-conspirators taken in furtherance of the conspiracy.

The general rule of law pertaining to the culpability of conspirators is that each individual member of the conspiracy is criminally responsible for the acts of his co-conspirators committed in furtherance of the conspiracy. The co-conspirator rule assigns legal culpability equally to all members of the conspiracy. All co-conspirators are responsible for actions undertaken in furtherance of the conspiracy regardless of their individual knowledge of such actions and regardless of which member of the conspiracy undertook the action.

The premise of the rule is that the conspirators have formed together for an unlawful purpose, and thus, they share the intent to commit any acts undertaken in order to achieve that purpose, regardless of whether they actually intended any distinct act undertaken in furtherance of the object of the conspiracy. It is the existence of shared criminal intent that is the *sine qua non* of a conspiracy.

*Commonwealth v. Lambert*, 795 A.2d 1010, 1016–1017 (Pa. Super.

2002) (*en banc*).

Regarding second-degree murder, we have stated:

Murder of the second degree is a criminal homicide committed while a defendant was engaged as a principal or an accomplice in the perpetration of a felony. […P]erpetration of a felony [is defined] as:

the act of the defendant in engaging in or being an accomplice in the commission of, or an attempt to commit, or flight after committing, or attempting to commit robbery, rape, or deviate sexual intercourse by force or threat of force, arson, burglary or kidnapping.

The malice or intent to commit the underlying crime is imputed to the killing to make it second-degree murder, regardless of whether the defendant actually intended to physically harm the victim.[5]

[Our Supreme Court discussed] the elements of [co-conspirator] liability for felony murder [by] saying that:

... the responsibility of persons, other than the slayer, for a homicide committed in the perpetration of a felony require[s] proof of a conspiratorial design by the slayer and the others to commit the underlying felony and of an act by the slayer causing death which was in furtherance of the felony. Moreover, [...w]hen an actor engages in one of the statutorily enumerated felonies and a killing occurs, the law, via the felony-murder rule, allows the finder of fact to infer the killing was malicious from the fact the actor was engaged in a felony of such a dangerous nature to human life because the actor, as held to the standard of a reasonable man, knew or should have known that death might result from the felony.

[O]ur Supreme Court [has] explained that not only the killer, but all participants in a felony, including the getaway

---

[5] Further, we have stated:

The Commonwealth is **not** relieved of the burden to prove that the defendant engaged in the underlying felony with the requisite *mens rea*. Since each crime enumerated in the felony-murder statute is a crime of specific intent, the Commonwealth must prove such intent. Once such intent is shown, the felony-murder doctrine merely imputes the malice incident to the intentional felony over to the killing, which, moreover, must be accomplished **in furtherance of** the intentional felony.

*Commonwealth v. Rawls*, 477 A.2d 540, 543 (Pa. Super. 1984) (emphasis in original).

driver, are equally guilty of felony murder when a killing by a felon occurs.

The statute defining second[-]degree murder does not require that a homicide be foreseeable; rather, it is only necessary that the accused engaged in conduct as a principal or an accomplice in the perpetration of a felony. Whether evidence sufficiently indicates that a killing was in furtherance of a predicate felony can be a difficult question. The question of whether the killing was in furtherance of the conspiracy is a question of proof for the jury to resolve. It does not matter whether the appellant anticipated that the victim would be killed in furtherance of the conspiracy. Rather, the fact finder determines whether the appellant knew or should have known that the possibility of death accompanied a dangerous undertaking.

**Lambert**, 795 A.2d at 1022–1023 (original brackets, quotations and citations omitted).

Here, the trial court determined there was ample direct and circumstantial evidence of a conspiracy:

[Appellant] was the one who provided the ultimate murder weapon, mere minutes before the murder occurred. [Appellant] also was the one to identify the Hess Express as the target of the robbery. […T]he nature of and extent of the conspiracy was developed at trial. Both Mathna and Conway testified that [Appellant] and the others discussed their roles in the Hess Express robbery as they drove to the scene of the crime and they prepared for the robbery behind a pine tree next to the store. Conway testified that, while driving to the location of the Hess Express, the group discussed who was going to actually pull the gun out [] in the impending robbery. [Appellant] was aware the gun was going to be used in the robbery. Furthermore, [Appellant] was aware that the firearm was functional, and Conway's testimony that [Appellant] "said he didn't want anything to do with the gun because he didn't want to shoot nobody []" demonstrated that [Appellant] knew that using the firearm in the robbery might result in someone getting shot and killed. The evidence showed that [Appellant] conspired with

- 21 -

the others to actively plan the crime, and he committed acts
in furtherance of the crime when he gave Bradshaw the gun
and entered the store as a look out.

Trial Court Opinion, 5/5/2016, at 17-18 (record citations, footnotes, and some quotations omitted).[6]

We also conclude there was sufficient evidence to establish that Bradshaw killed Ness in furtherance of the Hess Express robbery, which Appellant conspired to commit. Our review of the record confirms there was evidence showing that Appellant conspired to rob the Hess Express convenience store. Here, a co-conspirator shot and killed Linda Ness after demanding money. Even though Appellant did not act as a principal in committing the robbery or murder, his status as a co-conspirator in the robbery made him criminally liable for the actions of his confederates taken in furtherance of the conspiracy. Based upon this evidence, the jury permissibly determined that the killing was in furtherance of the robbery. Further, the intent to commit the robbery is imputed to the killing of Linda Ness to support a finding of second-degree murder against all participants in

_____

[6] While this analysis was offered by the trial court in addressing the sufficiency challenge to Appellant's conviction for conspiracy to commit homicide conviction, this factual conclusion supports the theory that Appellant conspired to commit robbery. Moreover, Appellant does not argue there was insufficient evidence to support his convictions for robbery and conspiracy to commit robbery. Because there was sufficient evidence of a conspiracy to commit robbery, which Appellant does not challenge, Appellant was liable for all of the crimes committed in furtherance of the robbery, including second-degree murder.

the conspiracy, regardless of whether actual harm was intended or foreseen. Hence, we conclude there was sufficient evidence to support Appellant's conviction for second-degree murder.

In his third issue presented, Appellant argues that the Commonwealth did not present sufficient evidence to support his conviction for conspiracy to commit homicide.[7] Appellant's Brief at 23-25. More specifically, and similar

_____

[7] To understand our disposition fully, we briefly review the factual and procedural backdrop of this conviction. The Commonwealth charged Appellant in the amended criminal information with homicide generally and conspiracy to commit homicide. The jury verdict form asked the jury to first determine if it found Appellant guilty of criminal conspiracy to commit homicide. Then, if the jury found Appellant guilty of conspiracy to commit homicide, it was to specify the degree of homicide under the conspiracy. The verdict form reflects that the jury found Appellant guilty of criminal conspiracy to commit criminal homicide and then fixed the degree of homicide as second-degree. Verdict Form, 9/12/2014. In its subsequent order announcing the judgment of sentence and throughout its Rule 1925(b) opinion, the trial court still refers to the conviction as criminal conspiracy to commit criminal homicide generally. ***See*** Order, 12/17/2014, at 1 (unpaginated); ***see also*** Trial Court Opinion, 5/5/2016, at 1, 15-18. Moreover, the trial court sentenced Appellant to 80 to 160 months for conspiracy to commit homicide. Under the Crimes Code, inchoate crimes, such as conspiracy, have the same maximum sentences as the underlying crimes to which they relate. ***Commonwealth v. Hoke***, 962 A.2d 664, 668 (Pa. 2009), *citing* 18 Pa.C.S.A. §§ 106(b) and 905(a). Thus, upon the jury's finding that Appellant was guilty of conspiracy to commit second-degree murder, the trial court should have sentenced Appellant to life-imprisonment. Thus, the judgment of sentence on this conspiracy conviction does not align with the jury's verdict. We note these inconsistencies, however, only to show the trial court's apparent confusion surrounding the conspiracy to commit homicide charge. Nevertheless, we need not resolve these sentencing issues because, as discussed at length **infra**, 18 Pa.C.S.A. § 903(c) prohibits multiple conspiracy convictions for multiple crimes that are the object of the same agreement or continuous conspiratorial relationship.

to his previous argument, Appellant maintains, "the evidence was insufficient to prove that Appellant knew Bradshaw would use a firearm during the Hess Express robbery" or that he "conspired with his co[-]defendants to bring about harm to Ness." *Id.* at 24. We read this claim as an assertion that there was only one conspiratorial agreement with a single objective.

The conspiracy statute contains the following provision:

> **(c) Conspiracy with multiple criminal objectives.--**If a person conspires to commit a number of crimes, he is guilty of only one conspiracy so long as such multiple crimes are the object of the same agreement or continuous conspiratorial relationship.

18 Pa.C.S.A. § 903(c).

This Court has stated:

> Section 903(c) articulates a concept which is not new in American jurisprudence, "'The conspiracy is the crime, and that is one, however diverse its objects.'" **Braverman v. United States**, 317 U.S. 49, 54 (1942), *quoting* **Frohwerk v. United States**, 249 U.S. 204, 210 (1919). **See also** W. LaFave and A. Scott, CRIMINAL LAW § 62 (1972) ("An agreement to commit several crimes is but one conspiracy."). In **Braverman**, **supra**, the Supreme Court went on to explain that, "the single agreement is the prohibited conspiracy, and however diverse its objects it violates but a single statute...." **Id.,** 317 U.S. at 54.
>
> [...T]his principle [has] been further defined:
>
> > A single, continuing conspiracy is demonstrated where the evidence proves that the essential feature of the existing conspiracy was a common plan or scheme to achieve a common, single, comprehensive goal.... A single, continuing conspiracy may contemplate a series of offenses, or be comprised of a series of steps in the formation of a larger, general conspiracy.... Therefore, where the evidence at trial

is sufficient for the jury to infer that the essential features of the existing conspiracy were a common plan or scheme to achieve a common, single, comprehensive goal or end, then the conclusion that the conspiracy was a single, continuing conspiracy is justified.

*Commonwealth v. Troop*, 571 A.2d 1084, 1089–1090 (Pa. Super. 1990);

*see also Commonwealth v. Henkel*, 487 A.2d 1010, 1013 (Pa. Super. 1985) ("[C]onspiracy is not severable as to diverse crimes contemplated by a single agreement[.]").

In determining whether a single or multiple conspiracy has been established, we consider several relevant factors:

The factors most commonly considered in a totality of the circumstances analysis of the single vs. multiple conspiracies issue are: the number of overt acts in common; the overlap of personnel; the time period during which the alleged acts took place; the similarity in methods of operation; the locations in which the alleged acts took place; the extent to which the purported conspiracies share a common objective; and, the degree to which interdependence is needed for the overall operation to succeed.

*Commonwealth v. Davis*, 704 A.2d 650, 654 (Pa. Super. 1997) (ellipsis omitted).

Here, as set forth in detail above, the conspiratorial agreement was to rob the Hess Express by threat of force with a firearm. A shooting occurred, which ultimately caused the death of the victim. The criminal acts took place simultaneously at the same location, and while pursuing the same common objective. Because the homicide occurred as a result of a single,

comprehensive goal to commit robbery, Appellant cannot be punished for two separate conspiracies. *See Commonwealth v. Barnes*, 924 A.2d 1202 (Pa. 2007) (defendant's and co-conspirators' conduct in selling cocaine, robbing victim, and murdering victim was result of one continuous conspiratorial relationship and could support only one conviction for conspiracy to deliver cocaine, that crime being the underlying foundation of agreement upon which conspiracy charges were based; events occurred within one 24-hour period, and all pertinent events took place in the same location, involved the same actors, and were in furtherance of the same objective). The homicide here occurred in furtherance of a single conspiratorial goal – the robbery of the Hess Express.[8] Accordingly, we vacate Appellant's judgment of sentence for conspiracy to commit homicide.

_____

[8] As we have explained, Appellant was liable for the second-degree murder regardless of an agreement to harm or kill the victim. Although Appellant supplied an operable firearm for the robbery, there is simply no evidence of record that there was a separate conspiracy to harm or kill the victim. Finally, even if there were a separate conspiracy to kill the victim, this Court recently questioned the viability of a conviction for conspiracy to commit second-degree murder:

> The Crimes Code does not expressly set forth that one can be found guilty of second-degree murder as a conspirator. Other jurisdictions have determined that one cannot conspire to commit felony murder. *Evanchyk v. Stewart*, 340 F.3d 933, 939–940 (9th Cir. 2003) (holding that, under Arizona law, one cannot conspire to commit felony murder); *see also Evanchyk v. Stewart*, 47 P.3d 1114, 1119 (2002); *State v. Wilson*, 43 P.3d 851, 853–854 (2002) (opining that Kansas does not recognize the crime of

*(Footnote Continued Next Page)*

However, because the trial court imposed a concurrent sentence for Appellant's conspiracy to commit homicide conviction, we have not upset the trial court's sentencing scheme and we need not remand this case for resentencing. **See Commonwealth v. Thur**, 906 A.2d 552, 570 (Pa. Super. 2006) (finding no need for remand because vacating sentence did not disturb sentencing scheme where that sentence was concurrent with other terms and did not increase the aggregate length of incarceration).

Finally, in this fourth issue presented, Appellant argues the trial court erred by failing to define the term "in furtherance of" in its jury instruction regarding the elements of second-degree murder, as set forth under Pennsylvania Suggested Standard Jury Instruction 2502B. Appellant's Brief at 25-26. He claims that "[t]he omission of this definition amounted to a fundamental error because [the trial court] failed to define an essential element of proof required for a jury to return a verdict of guilty." **Id.** at 26.

_(Footnote Continued)_ ⎯⎯⎯⎯⎯⎯⎯

> conspiracy to commit felony murder because conspiracy requires a specific intent). This Court has also repeatedly noted that one cannot attempt to commit felony murder because an attempt is a specific intent crime, as is conspiracy. **Commonwealth v. Spells**, 612 A.2d 458, 460 n.5 (Pa. Super 1992); **Commonwealth v. Griffin**, 456 A.2d 171, 177 (Pa. Super. 1983). We note, however, that our Supreme Court has concluded that one can conspire to commit third-degree murder, which does not require proof of a specific intent to kill. **Commonwealth v. Fisher**, 80 A.3d 1186 (Pa. 2013).

**Commonwealth v. Mitchell**, 135 A.3d 1097, 1101 n.2 (Pa. Super. 2016).

This issue is waived. Appellant did not make an on-the-record, contemporaneous objection when the trial court reviewed the relevant portion of its instructions to the jury. *See* N.T., 9/10/2014, at 181, 185; N.T., 9/11/2014, at 73-74 (no objection to written form jury instructions). "Issues not raised in the [trial] court are waived and cannot be raised for the first time on appeal." Pa.R.A.P. 302(a). "[I]t is axiomatic that issues are preserved when objections are made timely to the error or offense." ***Commonwealth v. Baumhammers***, 960 A.2d 59, 73 (Pa. 2008). "The purpose of contemporaneous objection requirements respecting trial-related issues is to allow the court to take corrective measures and, thereby, to conserve limited judicial resources." ***Commonwealth v. Sanchez***, 36 A.3d 24, 42 (Pa. 2011). "[A] party may not remain silent and afterwards complain of matters which, if erroneous, the court would have corrected." ***Commonwealth v. Strunk***, 953 A.2d 577, 579 (Pa. Super. 2008). Accordingly, Appellant waived his fourth appellate issue.

Conviction and sentence for conspiracy to commit homicide vacated. Judgment of sentence affirmed in all other respects. Jurisdiction relinquished.

Judge Panella joins.

Judge Platt files a Concurring and Dissenting Memorandum.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 5/2/2017